BELLENDEN R. HUTCHESON *vs.* DIRECTOR OF CIVIL
SERVICE & others.

Suffolk. January 5, 1972. — March 31, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Civil Service.* *Veteran.* *Constitutional Law,* Public employment,
Veteran.

Review of authorities dealing with the constitutionality of the veteran's preference and the disabled veteran's preference with respect to appointment in the civil service. [482–487]

The provisions of G. L. c. 31, § 23, as appearing in St. 1954, c. 267, § 5, requiring that disabled veterans who pass the civil service examination and are not physically disqualified be placed ahead of other veterans on eligible lists do not violate art. 6 or art. 7 of the Declaration of Rights of the Massachusetts Constitution or the Fourteenth Amendment to the Federal Constitution. [485–487]

The provision of G. L. c. 31, § 23, as appearing in St. 1954, c. 627, § 5, that a disabled veteran "shall be appointed [to a civil service position] . . . in preference to all other persons, including veterans," would be repugnant to arts. 6, 7, of the Declaration of Rights of the Massachusetts Constitution if applied in circumstances where there were only two qualified applicants for the position of assistant commissioner of the Department of Mental Health for children's services, one a veteran and the other a disabled veteran, and the effect of such provision of the statute would be to deny to the commissioner any discretion in making the appointment; and the commissioner must be directed to make the appointment without regard to such provision. [487–490] QUIRICO, J., joined by REARDON, J., dissenting.

BILL IN EQUITY filed in the Superior Court on May 11, 1971.

The suit was reported by *Lurie,* J.

*Joel Z. Eigerman* for the plaintiff.

*Terrence P. O'Malley,* Assistant Attorney General

(*Walter H. Mayo, III*, Assistant Attorney General, with him) for the Director of Civil Service & another.

BRAUCHER, J. Dr. Hutcheson seeks declaratory relief against the Director of Civil Service (the director), the commissioner of the Department of Mental Health (the commissioner) and Dr. Klebanoff to determine whether the commissioner is compelled by G. L. c. 31, § 23, as amended, to appoint Dr. Klebanoff to the office of assistant commissioner for children's services, in preference to Dr. Hutcheson. A judge of the Superior Court has reserved and reported the case without decision on the pleadings and a statement of agreed facts.

Dr. Hutcheson is a resident of the Commonwealth, a doctor of medicine licensed to practise here, and a psychiatrist with board eligibility in child psychiatry and many years of professional experience in the field of mental health services for children. He is a World War II veteran under G. L. c. 31, § 21 (see G. L. c. 4, § 7, Forty-third), and holds a provisional appointment as assistant commissioner for children's services (G. L. c. 19, § 8, inserted by St. 1966, c. 735, § 1, as amended). The commissioner considers him the best qualified of those eligible for permanent appointment to that office and would so appoint him in the absence of a statutory mandate to the contrary.

Dr. Klebanoff is an employee of the Department of Mental Health, holds a doctorate in psychology, and is a disabled veteran under G. L. c. 31, § 23A. He received a lower examination grade than Dr. Hutcheson. On April 21, 1971, the director certified both as eligible, with a notation that under G. L. c. 31, § 23, Dr. Klebanoff as a disabled veteran must "be appointed and employed in preference to all other persons, including veterans. (In case, however, . . . [Dr.] Klebanoff should decline the position, the following additional name [Dr. Hutcheson] is certified.)" On May 19, 1971, the director issued a new eligible list, containing three names: Dr. Klebanoff, with a notation that he is a disabled veteran; Dr. Hutche-

son, with a notation that he is a veteran; and a third veteran, who has withdrawn his name.

Dr. Hutcheson contends that G. L. c. 31, § 23, as appearing in St. 1954, c. 627, § 5,[1] is repugnant to arts. 6 [2] and 7 [3] of the Declaration of Rights of the Constitution of the Commonwealth and to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. He attacks two aspects of the statute: the placing of disabled veterans ahead of other veterans on eligible lists, and the "absolute preference" in the last sentence. We consider the two aspects separately.

1. The constitutionality of a preference for veterans in public employment has had a troubled history in this court, last reviewed in *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 187–193. The original statute concerning civil service, St. 1884, c. 320, required that the rules should provide for preference in appointments and promotions to honorably discharged veterans who served in the army or navy of the United States in time of war (§ 14, Sixth). In an opinion given to the House of Representatives in 1885, the Justices answered in the affirmative a question whether the provisions authorizing rules were constitutional but did not refer to the preference for veterans. *Opinion of the Justices,* 138 Mass. 601. Statute 1887, c. 437, expanded the statute to provide for the exemption of honorably discharged soldiers and sailors from civil

---

[1] "The names of persons who pass examinations for appointment to any position classified under the civil service shall be placed upon the eligible lists in the following order: — (1) Disabled veterans . . . in the order of their respective standing; (2) veterans in the order of their respective standing; . . . (4) other applicants in the order of their respective standing. . . . A disabled veteran shall be appointed and employed in preference to all other persons, including veterans."

[2] "No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public . . .."

[3] "Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family, or class of men . . .."

service examinations, and the Justices in the same year declined to answer a general question submitted by the Governor and Council as to the validity of proposed rules. *Opinion of the Justices,* 145 Mass. 587, 592.

The leading case is *Brown* v. *Russell,* 166 Mass. 14, decided in 1896, which "has not been modified by later decisions." *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv., supra,* at 192. In *Brown* v. *Russell* this court held unconstitutional St. 1895, c. 501, §§ 2 and 6, making the appointment of veterans to the detective force of the Commonwealth's district police compulsory, without examination, "whether the appointing power or the commissioners think they are or are not qualified to perform the duties of the office or employment which they seek" (p. 24). The court said (p. 25) that "it is inconsistent with the nature of our government, and particularly with articles 6 and 7 of our Declaration of Rights, that the appointing power should be compelled by legislation to appoint to public offices persons of a certain class in preference to all others, without the exercise on its part of any discretion, and without the favorable judgment of some legally constituted officer or board designated by law to inquire and determine whether the persons to be appointed are actually qualified to perform the duties which pertain to the offices." The court left open the possibility that a different rule might apply to lesser employments, not amounting to public offices, or to a preference for veterans who had been found qualified either by the appointing power or by examination (pp. 23–24) : "It may be said that, other qualifications being equal, there are reasons to believe that a veteran soldier or sailor often will make a better civil officer than a person who never has been subjected to the discipline of service in war, and it is distinctly a public purpose to promote patriotism, and to make conspicuous and honorable any exhibition of courage, constancy, and devotion to the welfare of the State, shown in the public service."

Later the same year the Justices were asked their

opinion with respect to a statutory provision that veterans who pass a civil service examination shall be preferred in appointment to all male persons not veterans. *Opinion of the Justices,* 166 Mass. 589. A majority of four justices answered that the provision was constitutional, while a minority of three thought not. Both opinions relied on the reasoning of *Brown* v. *Russell, supra.* In *Mayor of Lynn* v. *Commissioner of Civil Serv.* 269 Mass. 410, 414, decided in 1929, the court adopted the opinion of the majority of the Justices in the 1896 *Opinion of the Justices* "as the judgment of the court in the present case," citing also *Ransom* v. *Boston,* 192 Mass. 299, 304 (preference for veterans "was within the power of the Legislature") ; *Phillips* v. *Metropolitan Park Commn.* 215 Mass. 502, 506 (constitutionality "much debated" and "cannot go beyond closely confined boundaries") ; *Corliss* v. *Civil Serv. Commrs.* 242 Mass. 61, 65 ("there are constitutional limitations to preferences in favor even of veterans") ; *Rich* v. *Mayor of Malden,* 252 Mass. 213, 215 ("The Legislature can confer on [certain] veterans . . . a preference in the classified civil service"). See *Barnes* v. *Mayor of Chicopee,* 213 Mass. 1, 4 ("not necessary to consider" attack on veteran preference provisions, which "are distinct and severable from the rest of the statute").

The *Mayor of Lynn* case and the 1896 *Opinion of the Justices* have since been accepted by this court as authoritative. *Canty* v. *City Council of Lawrence,* 275 Mass. 261, 263. *Goodale* v. *County Commrs. of Worcester,* 277 Mass. 144, 147–148. *Malloy* v. *Mayor of Peabody,* 299 Mass. 110, 114. *Opinion of the Justices,* 303 Mass. 631, 647–649. *Younie* v. *Director of Div. of Unemployment Compensation,* 306 Mass. 567, 570. *MacCarthy* v. *Director of Civil Serv.* 319 Mass. 124. *Opinion of the Justices,* 320 Mass. 773, 781. *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 460–461. *Opinion of the Justices,* 324 Mass. 736, 742. *McNamara* v. *Director of Civil Serv.* 330 Mass. 22, 25–26. *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 187–192. Nothing we say here is intended to impair that

authority or to reopen the questions decided in the *Mayor of Lynn* case, *supra.*

2.  The additional preference for disabled veterans now found in G. L..c. 31, § 23, was introduced by St. 1922, c. 463.  So far as it requires that the names of disabled veterans who pass the civil service examination and are not physically disqualified be placed ahead of other veterans on eligible lists, the statute was held constitutional in *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 460–461: "The petitioners contend that the disabled veterans' preference exceeds the permissible bounds of legislative power.  It is argued that it cannot be said that a disabled veteran is more qualified for public service by his experience than is one not disabled, and that the quality of patriotism is 'not enhanced by the situation in which almost nobody, except a disabled veteran, can be appointed to a position in the civil service.'  We think, however, that it is open to the Legislature to say that, whereas all veterans may be preferred because of their service in uniform, the public interest is served by additionally preferring those who have incurred disability in the course of their service."

Decisions of this court both before and after the *Smith* case have had some limiting effect on the preference for disabled veterans.  *Hayes* v. *Hurley,* 292 Mass. 109, 112–113 (valid appointment of another not affected by subsequent certification that applicant was a disabled veteran).  *Younie* v. *Director of Div. of Unemployment Compensation,* 306 Mass. 567, 571–572 (disabled veteran subject to discharge during probationary period).  *MacCarthy* v. *Director of Civil Serv.* 319 Mass. 124, 126 (preference for disabled  veterans not applicable to promotions).  *Riceman* v. *Commissioners of the Dept. of Pub. Util.* 321 Mass. 318, 320–321 (disabled veteran subject to probationary period on reappointment after interval of Federal service).  *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 197 (appointing authority need not appoint disabled veteran as a patrolman in view of pardoned conviction of

armed robbery). *Seskevich* v. *City Clerk of Worcester*, 353 Mass. 354, 356 (appointing authority may appoint second disabled veteran on eligible list instead of first). *Starr* v. *Board of Health of Clinton*, 356 Mass. 426, 429–431 (appointing authority need not appoint disabled veteran in view of conflict of interest). But those decisions have not reopened the constitutional question decided in the *Smith* case.

Dr. Hutcheson now argues that the whole justification for a preference for veterans rests upon possible legislative determinations (1) that their service gives veterans higher qualifications, and (2) that to honor veterans may induce others to follow their example. He argues further that additional preference for disabled veterans serves neither purpose, and that a grant of public employment as a reward for past service is not constitutionally permissible. General Laws c. 31, § 23A, defines "disabled veteran" to require a continuing disability which does not prevent the efficient performance of the duties of the position sought, and to include anyone eligible to receive compensation from the veterans' administration for a service-incurred disability of not less than ten per cent based on wartime service. Thus, he argues, the determination of eligibility for the preference is delegated to a Federal agency, and the result is that it has no relation to combat service, to fitness for the public service, or to inducement of patriotic service. No one, he says, contemplates voluntarily attaining the status of disabled veteran; that status reflects, not valor or devotion but the sheerest accident, both as to incurring disability and as to recovery therefrom. Since these arguments were not made in the *Smith* case and were not discussed by the court, he asks us to consider them now.

We think Dr. Hutcheson understates the impact of the preference for disabled veterans as an inducement to patriotic service. The Legislature might conclude that men who are willing and indeed eager to serve in the armed forces in time of war may hesitate in view of their obligations to their dependents and the risks of disabling in-

jury, whether from combat, from training accident, or from other causes. The Legislature might think that a practice of preference for disabled veterans would mitigate such hesitation, to the common benefit. Moreover, having identified a class which should be preferred on other grounds, we think the Legislature may properly take into account the factor of need, "to make more equal the race of life," so long at least as it provides safeguards to insure that the efficient operation of the public service will not be impaired. See *Matter of Sullivan* v. *Hoberman,* 34 App. Div. 2d (N. Y.) 6, 11, affd. 28 N. Y. 2d, 667; *Wilczynski* v. *Harder,* 323 F. Supp. 509, 520 (D. Conn.). In defining the limits of the preferred class, the Legislature must be accorded a large discretion. See *Pinnick* v. *Cleary,* 360 Mass. 1, 27–31, and cases cited. We adhere to the decision in the *Smith* case.

3. We come now to the "absolute preference" contained in the last sentence of G. L. c. 31, § 23, as appearing in St. 1954, c. 627, § 5.[4] That sentence, which was enacted when the preference for disabled veterans was first established in 1922, has been before this court several times, but on each occasion we refrained from passing on the constitutionality of that part of the section "which purports to give to a disabled veteran absolute preference over all other persons including veterans in appointment to office." *Hayes* v. *Hurley,* 292 Mass. 109, 113. *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 460. *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 192–193.

The preference for disabled veterans is not, of course, "absolute" in the sense used in *Brown* v. *Russell,* 166 Mass. 14, 26, and *Opinion of the Justices,* 166 Mass. 589, 595; the disabled veteran must pass an examination for

---

[4] Statute 1971, c. 1051, § 1, struck out the words in brackets and inserted those in italics: "A disabled veteran shall be [appointed and employed] *retained in employment* in preference to all other persons, including veterans." But § 3 of St. 1971, c. 1051, makes the amendment inapplicable to any civil service list in existence on November 15, 1971, the effective date of the amending statute.

appointment and must present a doctor's certificate, approved by the director, that his disability is not such as to prevent the efficient performance of the duties of the position sought. See *Matter of Potts* v. *Kaplan,* 264 N. Y. 110, 115. Even after he is properly on the eligible list, the appointing power may in some circumstances refrain from appointing him on the ground that he is unfit or unsuitable. *Commissioner of the Metropolitan Dist Commn.* v. *Director of Civil Serv., supra,* 193. *Starr* v. *Board of Health of Clinton,* 356 Mass. 426, 431. If he is found to be qualified, however, the preference which the statute purports to grant is properly described as "absolute."

The statute approved in the 1896 *Opinion of the Justices,* 166 Mass. 589, contained a similar preference for veterans over nonveterans which was "absolute" in the same sense. In adopting the reasoning of the 1896 opinion, this court said that "it reaches close to the limit of legislative power." *Mayor of Lynn* v. *Commissioner of Civil Serv.* 269 Mass. 410, 414–415. See *Opinion of the Justices,* 324 Mass. 736, 742; *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv., supra,* 190–193, and cases cited. The actual situation in the *Mayor of Lynn* case, however, was that an eligible list of three veterans had been certified for appointment in the fire department of the city in accordance with the rules of the civil service commissioners; the commissioners refused to certify in addition the name of the person receiving the highest grade on the examination because he was not a veteran.

The "absolute preference" for qualified veterans over qualified nonveterans was eliminated from the statutes by revisions in 1919 and 1920, but remained in the civil service rules until 1922. In that year we held that the provision in the rules was "obviously inconsistent with the existing civil service statute." *Corliss* v. *Civil Serv. Commrs.* 242 Mass. 61, 65. The appointing authority must make appointment from an eligible list. But as was said in *Seskevich* v. *City Clerk of Worcester,* 353 Mass.

354, 356, by reason of par. C of G. L. c. 31, § 15 (as appearing in St. 1964, c. 720, § 1), "if the appointing authority appoints a person other than the person highest on the list, it must deliver a statement of reasons to the director and no such appointment shall be effective until such statement is received. The preference to disabled veterans does not distinguish among those on the eligible list who are in that class."

Thus the present situation is that there is no "absolute preference" of qualified veterans over qualified nonveterans. Nor is there any "absolute preference" as between two veterans on an eligible list, or as between two disabled veterans on an eligible list. For the reasons asserted by Dr. Hutcheson and summarized under point two above, we think the reasons for preferring a disabled veteran to other veterans are less compelling than the reasons for preferring veterans to nonveterans. We therefore have difficulty in articulating a rational ground for an "absolute preference" of disabled veterans over other veterans when there is no such preference for veterans over nonveterans.

The 1971 amendment (fn. 4 above), however, reduces the likelihood that the broad question of the validity of the "absolute preference" for disabled veterans will arise in the future. We therefore confine our decision to the facts before us, which dramatically highlight the adverse impact of the "absolute preference" on the efficient operation of the public service. The question here is not one of adding one more fireman to a fire department, but of appointing one of the commissioner's principal assistants, important enough to warrant a separate section of the General Laws to define his qualifications and duties. Compare *Bingham* v. *Bach,* 151 Colo. 332, 333–334; *Carey* v. *Morton,* 297 N. Y. 361, 367. The record sheds no light on the nature of Dr. Klebanoff's disability or on its tendency to increase his qualifications for the office, nor does it disclose why this is not a case of promotion, to which the preference would not apply. There are not dozens of qualified applicants, but two, and the effect of

the statute is to deny to the commissioner any discretion as to who may be appointed. Compare *Matter of Neubeck* v. *Bard*, 275 N. Y. 43, 47–48. We think the operation of the statute in these circumstances is capricious and contrary to arts. 6 and 7 of the Declaration of Rights.

4. In view of the conclusion thus reached, it is unnecessary for us to pass on the effect of the Fourteenth Amendment to the Constitution of the United States, which seems to be less restrictive than our Declaration of Rights. *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 461, and cases cited. See *McGowan* v. *Maryland*, 366 U. S. 420, 425–426; *White* v. *Gates*, 253 F. 2d 868, 869–870, cert. den. 356 U. S. 973; *Wilczynski* v. *Harder*, 323 F. Supp. 509, 520–521 (D. Conn.); *Matter of Potts* v. *Kaplan*, 264 N. Y. 110, 114; *Matter of Bateman* v. *Marsh*, 188 Misc. (N. Y.) 189, 195–198, affd. 271 App. Div. (N. Y.) 813, affd. 296 N. Y. 849.

5. A decree is to be entered (a) declaring that the absolute disabled veterans' preference provided by the last sentence of G. L. c. 31, § 23, as appearing in St. 1954, c. 627, § 5, in the circumstances of this case, is contrary to arts. 6 and 7 of the Declaration of Rights of the Constitution of Massachusetts, and (b) ordering the commissioner to appoint an assistant commissioner for children's services from the eligible list certified on May 19, 1971, without regard to the last sentence of G. L. c. 31, § 23.

*So ordered.*

QUIRICO, J. (dissenting, with whom Reardon, J., joins) I am unable to agree with the opinion of the Court. Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution gives to the Legislature "full power and authority . . . to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without, so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering

thereof, and of the subjects of the same, and for the neces-
sary support and defence of the government thereof."
The opinion of the court recognizes that we have here-
tofore held that this provision permits the legislature
to provide by statute that, in determining eligibility for
appointment to positions in the civil service of the Com-
monwealth and its subdivisions, (a) veterans who pass
a civil service examination may constitutionally be pre-
ferred over applicants who are not veterans (*Opinion of
the Justices,* 166 Mass. 589, and *Mayor of Lynn* v. *Com-
missioner of Civil Serv.* 269 Mass. 410, 414); and (b)
disabled veterans who are not otherwise physically dis-
qualified and who pass a civil service examination may
constitutionally be preferred over all other persons, in-
cluding veterans who are not disabled (*Smith* v. *Director
of Civil Serv.* 324 Mass. 455, 460–461). To that extent
I agree.

Having gone that far the court then draws a line be-
yond which it says the Legislature may not go. It holds
that the Legislature may not accord disabled veterans the
"absolute preference" which it attempted to accord them
by the following provision added to G. L. c. 31, § 23, by
St. 1922, c. 463: "A disabled veteran shall be appointed
and employed in preference to all other persons, including
veterans." The basic holding of the court appears to be
that arts. 6 and 7 of the Declaration of Rights require it
to draw this impenetrable line, but before reaching that
conclusion the opinion states that it is confined "to the
facts before us, which dramatically highlight the adverse
impact of the 'absolute preference' on the efficient opera-
tion of the public service." To the extent that the court's
opinion is based on concern for the adverse impact of the
absolute preference on the efficient operation of the public
service, I do not believe that to be a proper matter for
judicial review, if the statute is otherwise constitutional.
To the extent that the opinion is based on a supposed con-
stitutional barrier, I do not agree.

1. Before discussing the constitutionality of the abso-
lute preference, I feel constrained to say that the facts

before us do not "dramatically highlight the adverse impact" of this preference on the efficiency of the public service. The disabled veteran in this case is not entitled to appointment solely because of that status. He also passed the prescribed civil service examination. We do not have a disabled veteran who just barely attained the minimum passing grade and who would be preferred over another person who had a much higher passing grade. In this case the plaintiff's examination score was 97.30 per cent and that of the disabled veteran was 93 per cent, both very good scores. Whether the appointment of the person with the highest examination score is the best way to insure an efficient public service is a policy decision to be made by the Legislature, and it has decided otherwise. It has not in any situation required appointment of the person with the highest score. On the contrary it has expressly authorized the appointment of someone with a lower score. G. L. c. 31, § 15, par. C, as amended. G. L. c. 31, § 15G, inserted by St. 1967, c. 780, § 15, and as amended by St. 1968, c. 652, § 10. On this record it is not open to the court to decide that there was no rational basis for that decision of the Legislature. See *Mile Road Corp.* v. *Boston,* 345 Mass. 379, 382–383, app. dism. 373 U. S. 541.

2. I also think it appropriate to comment on several statements in the opinion which appear to have influenced the court's ultimate decision.

The opinion states that "[t]he record sheds no light on the nature of Dr. Klebanoff's disability or on its tendency to increase his qualifications for the office." The burden of presenting to this court a record showing a right to relief is on the plaintiff, and not on Dr. Klebanoff (the disabled veteran) who is not the party appealing in this case. There is no statutory or constitutional requirement that the disability of a veteran be shown to be one which will increase his qualifications for public service. General Laws c. 31, § 23A, as amended through St. 1958, c. 69, § 1, requires only that the veteran present "a certificate of any physician, approved by the director, that his

disability is not such as to prevent the efficient performance of the duties of the position to which he is eligible." We must assume that Dr. Klebanoff has met this requirement from the fact that he has been certified as eligible for appointment.

The opinion states that the record does not "disclose why this is not a case of promotion, to which the [absolute] preference would not apply." *MacCarthy* v. *Director of Civil Serv.* 319 Mass. 124, 126. Again, the plaintiff has the burden of presenting a record showing a right to relief. Under the express allegations of his bill in equity, and under the terms of the "Statement of Agreed Facts" on which this case was submitted for decision, this is a case of an appointment and not a promotion.

The opinion also states that "the effect of the statute is to deny to the commissioner [of the Department of Mental Health] any discretion as to who may be appointed." Any requirement that there be "discretion as to who may be appointed" has been satisfied in this case by the fact that both the plaintiff and Dr. Klebanoff have been examined and found qualified by the civil service authorities. *Brown* v. *Russell,* 166 Mass. 14, 25. *Opinion of the Justices,* 166 Mass. 589, 595–596. The commissioner has no enforceable private right or interest in selecting the plaintiff rather than Dr. Klebanoff, and he represents no public right or interest which is in any different or distinguishable from that of the Commonwealth. He therefore has no standing to complain that the Legislature has itself made the decision that the public interests will be best served by appointing a disabled veteran to the position in question.[1] It is worth noting that the appointing authority is not entirely

---

[1] The result is not unlike that authorized by the provision of G. L. c. 31, § 15, as amended, that when a position is first placed under civil service, the civil service commission may vote "to include under civil service any present incumbent of the position, subject to passing a qualifying examination, prescribed by the director." See G. L. c. 31, § 42, as appearing in St. 1970, c. 720, § 1, authorizing appointment to specified positions without examination. See also *Nichols* v. *Commissioner of Pub. Welfare,* 311 Mass. 125, upholding the constitutionality of this type of statute.

stripped of discretion to the extent of being compelled to appoint an incompetent or unsuitable person just because he is a disabled veteran who has passed a civil service examination. In *Commissioner of Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 193, we held that "under § 23 an appointing authority has the power and duty to protect the public interest in having only public officers and employees of good character and integrity and may refrain from appointing a disabled veteran in preference to others where there are reasonable grounds to regard that veteran's character or past conduct as rendering him unfit and unsuitable to perform the duties of office." See *Starr* v. *Board of Health of Clinton*, 356 Mass. 426, 429–431. There is nothing in the record to indicate anything about Dr. Klebanoff's character or past conduct rendering him unfit and unsuitable to perform the duties of the office in question.

3. After stating the facts of this case and tracing the history of our statutes on veterans' and disabled veterans' preferences, the opinion of the court concludes with the following statement: "We think the operation of the statute in these circumstances is capricious and contrary to arts. 6 and 7 of the Declaration of Rights." Clearly that statement is intended to apply only to that part of G. L. c. 31, § 23, providing that "[a] disabled veteran shall be appointed and employed in preference to all other persons, including veterans."

The court's attempt, by a careful choice of language, to limit the effect of its decision to "the circumstances of this case" was probably influenced by its observation that "[t]he 1971 amendment, . . . however, reduces the likelihood that the broad question of the validity of the 'absolute preference' for disabled veterans will arise in the future." [2] I do not agree with this prediction. De-

---

[2] Statute 1971, c. 1051, § 1, amended G. L. c. 31, § 23, by making the so called "absolute preference" of disabled veterans inapplicable to original appointment or employment, but continuing it in effect as to retention in employment. The amendment does not apply to civil service eligibility lists existing on November 15, 1971. See fn. 4 to the court's opinion.

spite the attempted limitation of the opinion to the facts of this case, the court is in effect deciding that the Legislature cannot constitutionally give disabled veterans passing civil service examinations a right to be appointed and employed in preference to all other persons. That issue is squarely raised in the case before us, and it does not turn on facts peculiar to this case. It is reasonable to expect that today's opinion will be followed by similar suits involving other recent situations in which an appointing authority received an eligible list with the instruction that he was required to appoint the sole disabled veteran listed thereon and he complied with the instruction. I am unable to understand how the court can then say that today's opinion will not be a binding precedent in such other cases. If the statute under consideration is unconstitutional, litigation seeking the displacement of persons now holding positions and their replacement by others cannot be prevented by any choice of words of limitation in today's opinion. See *Hayes* v. *Hurley,* 292 Mass. 109.

In its conclusion that the operation of the statute in question in the circumstances of this case "is capricious and contrary to arts. 6 and 7 of the Declaration of Rights," the court does not attempt to specify or discuss in detail the particular part of either article which the statute supposedly violates. I do not believe that it violates either article.

There can be no quarrel with the lofty and idealistic statement of art. 7 to the effect that: "Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family, or class of men: Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it." While art. 7 has been cited frequently in opinions relating to veterans' preferences, the only opinion which attempted to discuss its application to such a case was *Brown* v. *Russell,* 166 Mass. 14, 21. There

the extent of the court's attention to art. 7 alone was the following: "This article is declarative of the ends of the institution of government. It may be said to be fairly within the intent of this article that public offices, which are the instrumentalities of government, ought not to be created or filled for the profit, honor, or private interest of any one man, family, or class of men, but only for the protection, safety, prosperity, and happiness of the people, and for the common good." That is little more than a restatement or paraphrase of art. 7 itself without further statement of any reason for holding that it prohibited the absolute veterans' preference then under consideration. It has ever since been commonplace to couple arts. 6 and 7 in questioning or discussing the constitutionality of veterans' preferences, citing *Brown* v. *Russell* as a judicial precedent for doing so. It is doubtful in my mind whether art. 7 has any bearing on veterans' preferences, but if it has, it should be taken as applying only to the statute which the court struck down in *Brown* v. *Russell.* That was a statute which compelled the appointment of veterans to public office in preference to all other persons, without the necessity of veterans taking any examination and without any other inquiry into their qualifications.

The remaining question is whether that part of § 23 which requires that "[a] disabled veteran shall be appointed and employed in preference to all other persons, including veterans," violates art. 6 of the Declaration of Rights. Article 6 provides: "No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

Article 6 has been cited in many opinions and decisions of this court dealing with the subject of veterans' prefer-

ences in public employment.  However, the only case cited by the court in its present opinion, or by the briefs of the parties to this case, in which any statute giving such a preference has been held unconstitutional is that of *Brown* v. *Russell*, 166 Mass. 14.  Although the court in that case seemed to rely heavily on art. 6, it did not hold that art. 6 precluded the granting of such preferences. On the contrary, it recognized that the Legislature could. grant such preferences under certain circumstances. While the court expressed some reservations about granting them solely as a reward for past military service and indicated the necessity of basing the grant on the existence of some benefit or advantage to the public (pp. 24–25), that does not seem to have been the principal ground on which it struck down the statute then before it.  It seems clear that the constitutional defect which the court found in that statute was its requirement (p. 25) "that certain public offices and employments . . . shall be filled by veterans in preferment to all other persons, whether the veterans are or are not found or thought to be actually qualified to perform the duties of the offices and employments by some impartial and competent officer or board charged with some public duty in making the appointments."

Only five months after deciding the case of *Brown* v. *Russell, supra,* the same court, by a majority of its Justices, approved, as to constitutionality, several statutes which gave a preference in public employment to veterans found qualified to fill the positions to which they were appointed.  *Opinion of the Justices,* 166 Mass. 589.  That opinion, given in 1896, was the first in a progressive series of opinions and decisions upholding against constitutional attack every veterans' preference statute considered by the court.  See *Opinion of the Justices,* 324 Mass. 736, 740–742, and cases cited.  All of the statutes thus upheld included the basic requirement that the veteran being preferred be otherwise qualified to perform the duties of the office or position to which he was ap-

pointed.[3]   The portion of G. L. c. 31, § 23, which the court is striking down as applied in this case likewise grants a preference only to veterans who pass the required civil service examination for the position involved.

The same factors which led this court, in *Opinion of the Justices,* 166 Mass. 589, and *Mayor of Lynn* v. *Commissioner of Civil Serv.* 269 Mass. 410, to decide that the Legislature could constitutionally grant veterans a preference over nonveterans were held in *Smith* v. *Director of Civil Serv.* 324 Mass. 455, to permit a preference for disabled veterans over all other persons, including veterans.   It may well be argued that in deciding the latter case this court knew that as a consequence of its decision the appointing power receiving an eligible list including the name of one disabled veteran willing to accept appointment would be required to appoint that veteran, absent unusual facts such as those involved in *Commissioner of Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, and *Starr* v. *Board of Health of Clinton,* 356 Mass. 426, hereinbefore cited.   That may not constitute a holding that the absolute disabled veterans' preference with which we now deal was constitutional, but it came very close to being such a holding.   Assuming the *Smith* case did not decide the question now before this court, in my opinion the same reasoning which the court applied in that case requires us now to hold that the statute requiring Dr. Klebanoff to be appointed because he is a disabled veteran is constitutional.

We are no longer concerned with the question whether the Legislature may, in connection with public employment, grant preference to veterans over nonveterans, or grant preference to disabled veterans over all other per-

---

[3] As early as 1887 in *Opinion of the Justices,* 145 Mass. 587, 591–592, the court said that under a statute then being considered, veterans "cannot be preferred for appointment to office or employment in the service of the Commonwealth, or the cities thereof, without having made application for appointment to office or employment to the civil service commissioners."   That result was reached as matter of statutory construction, and involved no constitutional question.

sons, including veterans. That power has been recognized in a number of decisions by this court, and it is recognized in the present opinion of the court. Inherent in that power is the power to determine the nature and extent of such preferences. The Legislature has decided that disabled veterans "shall be appointed and employed in preference to all other persons, including veterans." G. L. c. 31, § 23, as amended. That legislation is entitled to a presumption of constitutionality. "The presumption of constitutionality must prevail in the absence of some factual foundation specifically set forth in the record for overthrowing the statute." *Commonwealth* v. *Leis,* 355 Mass. 189, concurring opinion, p. 200, and cases cited. *Mile Road Corp.* v. *Boston,* 345 Mass. 379, 382–383, app. dism. 373 U. S. 541. There is no such foundation in this record. We must be ever mindful that "[j]udicial inquiry does not extend to the expediency, wisdom or necessity of the legislative judgment for that is a function that rests entirely with the law-making department." *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 189, and cases cited. We must be even more mindful of the admonition in *Opinion of the Justices,* 166 Mass. 589, 595, that "[o]f the wisdom of such legislation [granting veterans' preferences in public employment] we are not made the judges." Without attempting to judge the wisdom of that part of G. L. c. 31, § 23, which provides that "[a] disabled veteran shall be appointed and employed in preference to all other persons, including veterans," it is my opinion that the Legislature was constitutionally authorized and empowered to enact it.